T.C. Memo. 2001-7

UNITED STATES TAX COURT

RICHARD AND JUDITH HAEDER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12109-98.                    Filed January 17, 2001.

Richard Haeder, pro se.

Blaine C. Holiday, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, Judge:  Respondent determined the following
deficiencies, additions to tax, and accuracy-related penalties
with respect to petitioners' Federal income taxes:[1]

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.  Monetary amounts are rounded to the nearest dollar.

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Accuracy-related penalty sec. 6662(b)(1) | sec. 6662(b)(2) |
|------|-----------|------------------|-----------------|-----------------|
| 1989 | $6,646 | $1,915 | -- | $1,532 |
| 1990 | 10,146 | 1,805 | -- | 2,026 |
| 1991 | 3,546 | -- | $686 | -- |
| 1992 | 268 | -- | 78 | -- |
| 1993 | 3,210 | -- | -- | 1,136 |

After concessions,[2] the issues remaining for decision are:

(1) Whether petitioners are entitled to deductions for wage expenses of $1,918 for 1989 and of $2,000 for each of the years 1990 through 1993;

(2) whether petitioners' income from wages should be reduced by $2,000 for each of the years 1989 through 1993;

(3) whether petitioners are entitled to deductions for medical plan expenses of $3,446, $4,197, $13,140, $4,568, and $8,914 for 1989, 1990, 1991, 1992, and 1993, respectively;

(4) whether petitioner Judith Haeder is entitled to deductions for contributions to an individual retirement account (IRA) of $2,000 for each of the years 1989 through 1993;

(5) whether petitioners are entitled to additional deductions for legal and professional expenses on petitioner Richard Haeder's Schedules C, Profit or Loss From Business (Sole

---

[2]The parties settled several issues raised in the notice of deficiency. Those issues are set forth in a stipulation of agreed adjustments filed with the Court on July 13, 1999. The parties' concessions are not repeated here but are incorporated herein by this reference.

Proprietorship), of $3,976 and $1,305 for the years 1990 and 1991, respectively;

(6) whether petitioners are entitled to additional deductions for travel expenses of $3,535, $558, $1,764, $2,738, and $2,512 for 1989, 1990, 1991, 1992, and 1993, respectively;

(7) whether petitioners are entitled to additional deductions for meal and entertainment expenses of $1,592, $597, $324, $886, and $2,104 for 1989, 1990, 1991, 1992, and 1993, respectively;

(8) whether petitioners are entitled to a bad debt deduction of $300 for 1991;

(9) whether petitioners are entitled to a deduction for a repair expense of $2,956 for 1993;

(10) whether petitioners omitted $1,085 from business income for 1989;

(11) whether petitioners omitted $2,223 of income from prizes for 1989;

(12) whether petitioners' dividend income should be reduced by $8,732 for 1992;

(13) whether petitioners are liable for additions to tax for late filing under section 6651 for 1989 and 1990;

(14) whether petitioners are liable for accuracy-related penalties under section 6662(a) and (b)(1) for 1991 and 1992 because of negligence or disregard of rules or regulations; and

(15) whether petitioners are liable for accuracy-related penalties under section 6662(a) and (b)(2) for 1989, 1990, and 1993 because of substantial understatements of their income tax.

## FINDINGS OF FACT[3]

Some of the facts have been stipulated and are so found. The stipulation of facts filed by the parties is incorporated in this opinion by this reference.

Background

Petitioners resided in Rapid City, South Dakota, when they filed their petition. Hereinafter, references to petitioner are to Richard Haeder, and references to Mrs. Haeder are to Judith Haeder. For each of the years in issue, petitioners claimed dependency exemptions for two minor children.

After completing a clerkship in Washington, D.C., petitioner had started working for a large law firm located in Portland, Oregon, in 1967. During the years at issue, petitioner was an attorney licensed to practice law in the States of Oregon and

---

[3]Contrary to Rule 151(e), which governs the form and content of briefs submitted to the Tax Court, petitioners provided in their opening brief a "statement of facts" that was not presented in numbered statements and that, for the most part, did not give references to the pages of the transcript, exhibits, or other sources relied upon to support the statements contained therein. Furthermore, in their reply brief, petitioners did not set forth objections to respondent's proposed findings of fact. Consequently, in our findings of fact, we have relied heavily upon respondent's proposed findings. By failing to follow the Court's Rules, "petitioners have assumed the risk that we have not considered the record in a light of their own illumination." Monico v. Commissioner, T.C. Memo. 1998-10.

South Dakota. His practice in Oregon primarily involved labor and personal injury law.

In 1986, petitioners moved to Rapid City, South Dakota. There, petitioner began practicing law as a sole proprietor. To establish his practice in the Rapid City area, petitioner spent many hours in the years following the relocation performing pro bono legal work for the elderly and for Pennington County Legal Aid, giving talks and seminars and meeting people in the community. He volunteered in the community to enhance his reputation. When necessary, petitioner traveled to Oregon to perform legal services.

Petitioners filed a joint Federal individual income tax return for each of the years at issue on the following dates:

| Year | Date Filed |
| --- | --- |
| 1989 | 2/01/94 |
| 1990 | 1/10/94 |
| 1991 | 2/15/94 |
| 1992 | 3/30/94 |
| 1993 | 4/15/94 |

Petitioner included a Schedule C relating to his law practice with each of the returns. On those Schedules C, petitioner reported the following gross receipts, total expenses, and net profit or loss:

|  | Gross | Total | Net profit |
| Year | Receipts | Expenses | or (loss) |
| 1989 | $153 | $19,695 | ($19,542) |
| 1990 | -- | 23,462 | (23,462) |
| 1991 | 209 | 24,144 | (23,935) |
| 1992 | -- | 13,991 | (13,991) |
| 1993 | -- | 23,769 | (23,769) |

Most of the income reported on petitioners' returns for 1989 through 1993 was investment income.

Respondent audited petitioners' returns for the years in issue and made adjustments to income and deductions. We address the issues remaining for decision below.

Wages and IRA Deductions

In Rapid City, South Dakota, petitioner maintained his law office in his residence. He had no office help outside of whatever assistance Mrs. Haeder gave him. Mrs. Haeder usually answered the telephone, greeted visitors, and cleaned the house, including petitioner's office. At his residence, petitioner initially had only one telephone line for both business and personal use. Eventually he had a second line installed to accommodate a fax machine.

On a date that does not appear in the record, petitioner decided to start paying Mrs. Haeder a salary. Petitioner did not determine Mrs. Haeder's salary on the basis of hours worked or services performed; instead, he based her salary on the maximum amount a qualified individual could deduct for qualifying

contributions to an IRA.  Mrs. Header did not have a written employment contract with petitioner.  She had no set work schedule, and she did not maintain any time or performance records for work allegedly performed for petitioner.

On petitioner's 1989 Schedule C, petitioner claimed a wage expense of $1,918.  On each of the Schedules C for 1990 through 1993, petitioner claimed a wage expense of $2,000.  On petitioners' tax returns for the years at issue, Mrs. Haeder reported $2,000 as income from wages for each of the years in issue and also claimed a $2,000 IRA deduction for each of those years.

Petitioner did not pay the purported salary directly to Mrs. Haeder.  For 1990, 1992, and 1993, on December 31 of each year, petitioner had his brokerage firm transfer $2,000 from petitioner's account into an IRA maintained in Mrs. Haeder's name.[4]  For 1991, petitioner wrote a check dated December 31, 1991, in the amount of $1,847 and drawn on petitioners' joint account.  Petitioner wrote that check payable to himself, Mrs. Haeder endorsed it, and Mrs. Haeder deposited it into her IRA on January 7, 1992.

Petitioner did not issue a Form W-2, Wage and Tax Statement, to Mrs. Haeder for each of the years 1989 through 1992.  With the

---

[4]Although petitioner claimed a deduction for wage expenses of $1,918 for 1989, the record contains no proof of any payment to or for the benefit of Mrs. Haeder in that year.

returns they filed for 1990 and 1991, petitioners included a "Wages Schedule", which reported that petitioner had paid wages of $2,000 to Mrs. Haeder for those years. The 1990 wages schedule reported no information relating to FICA or Medicare tax withholding. The 1991 wages schedule reported that petitioner had deducted FICA taxes of $124 and Medicare taxes of $29. For 1993, petitioner issued a Form W-2 to Mrs. Haeder showing $2,000 in wages, $124 in FICA, and $29 in Medicare taxes.

In the notice of deficiency, respondent determined that petitioners were not entitled to deduct the amounts claimed on the Schedules C for wages paid to Mrs. Haeder for the years in issue. Respondent also reduced petitioners' income by the amounts Mrs. Haeder had reported as income from wages. In addition, respondent determined that petitioners were not entitled to claim the IRA deductions for the years in issue.

Medical Plan Expense Deductions

Effective January 1, 1988, on the advice of his accountant, John H. Fuller (Mr. Fuller), petitioner adopted an agreement entitled "Employee Medical-Dental Expense Reimbursement Plan [for] Richard Haeder, Attorney at Law" (plan). The agreement stated that it covered "all employees of RICHARD HAEDER, ATTORNEY AT LAW" and the spouse and dependents of any covered employee. Pursuant to the agreement:

2.  REIMBURSEMENT FOR MEDICAL & DENTAL CARE EXPENSES:

Effective 1-01-88 and until termination of the Plan, RICHARD HAEDER, ATTORNEY AT LAW shall reimburse each covered employee, medical and dental expenses, as defined in section 3 herein; provided, however, that the total reimbursement to any covered employee during any one calendar year shall not exceed the sum of $10,000.00. Reimbursement to each covered employee shall be made at least annually, or more frequently at the discretion of RICHARD HAEDER, ATTORNEY AT LAW. Upon submission of proof of payment by the employee, RICHARD HAEDER, ATTORNEY AT LAW may, at his discretion, pay any or all of the expenses defined herein directly, in lieu of making reimbursement therefor.

3.  MEDICAL AND DENTAL CARE EXPENSES DEFINED:

(a) Medical and dental care expenses covered under the Plan include those expenses of the covered employees, their spouses and dependents which are in excess of any coverage provided for under any insurance policies owned by RICHARD HAEDER, ATTORNEY AT LAW, the employee or under any other health or dental plan which may be carried either by RICHARD HAEDER, ATTORNEY AT LAW, on behalf of its employees or personally by the employee.

(b) The general classes of covered expenses under the Plan will be:

> Nursing
> Hospital Bills
> Doctor and Dentist Bills
> Psychiatric Care
> Drugs and Prescriptions
> Medical related transportation, and
> Health and Accident Insurance.

Included in the foregoing, but not by way of limitation, will be all medical and dental expenses, including hospital expenses, both room and board and special hospital services; surgical expenses, diagnostic x-rays, prenatal and maternity expenses; infant care in hospital, services of physicians, surgeons and specialists, in or out of hospital; services of registered nurses, in or out of hospital;

> rental of iron lung or other equipment for therapeutic use, in or out of hospital; artificial limbs or other prosthetic appliances; diagnostic laboratory procedures; drugs and medicine requiring prescriptions; oxygen, anesthesia; blood and plasma, x-ray and radium treatments; local professional ambulance services; psychiatric treatment; dental care; surgery and appliances; eye glasses; hearing aids and examination thereof; and premiums on accident and health insurance, including hospitalization, surgical and medical insurance.

Petitioner claimed that Mrs. Haeder was eligible to participate in that plan in her capacity as his employee and that he and their minor children were eligible to participate in the plan as Mrs. Haeder's spouse and dependents.

During the years at issue, petitioners and their children were covered by an individual health insurance policy issued in petitioner's name. The record contains no evidence that, during those years, Mrs. Haeder also had coverage under either a health insurance policy issued in her name or a group health insurance policy.

On the Schedules C for 1989, 1990, 1991, 1992, and 1993, petitioner claimed medical plan expenses of $3,446, $4,197, $13,140, $4,568, and $8,914, respectively, including medical insurance premiums and medical and dental expenditures for petitioner, Mrs. Haeder, and their two minor children. On audit, respondent determined that petitioners substantiated medical plan expenses as follows:

| Item | 1989 | 1990 | 1991 | 1992 | 1993 |
|------|------|------|------|------|------|
| Insurance premiums | $2,657 | $3,211 | $4,018 | $3,520 | $3,936 |
| Out-of-pocket costs | 146 | 986 | 6,369 | 1,048 | 3,834 |
| Total | 2,803 | 4,197 | 10,387 | 4,568 | 7,770 |

In the notice of deficiency, respondent determined that, although petitioners had substantiated medical plan expense payments as summarized above, petitioners were not entitled to deduct any of the amounts petitioner claimed on the Schedules C for medical plan expenses.  Respondent determined, however, that petitioners were entitled to deduct substantiated medical expenses on their Schedules A, Itemized Deductions, subject to the statutory limitations.  At trial, petitioner submitted medical and dental statements that showed payments for dental expenses totaling $136, $86, $5,529, and $338 for 1989, 1990, 1991, and 1992, respectively.  It is not clear from the record whether those payments were included in the amounts previously submitted to the IRS auditor during the audit of the returns for those years.

Legal and Professional Expenses

On the Schedules C for 1989, 1990, and 1991, petitioner claimed legal and professional expenses of $175,[5] $8,623, and $4,305, respectively.  Petitioner claimed no deductions for legal and professional expenses on the Schedules C for 1992 and 1993.

---

[5]Respondent made no adjustment relating to the legal and professional expenses claimed for 1989.

On audit, petitioners substantiated $8,527 and $4,305 of legal and professional expenses for 1990 and 1991, respectively. In the notice of deficiency, respondent allowed petitioners to deduct $4,647 and $3,000 of the substantiated expenses for 1990 and 1991, respectively, on the Schedules C. Respondent also allowed petitioners to deduct $3,880 and $1,305 of the substantiated expenses for 1990 and 1991, respectively, on their Schedules A, subject to the statutory limitations, as tax preparation fees. Respondent disallowed $96 of the amount claimed for 1990 as unsubstantiated expenses.

Travel Expenses

On the Schedules C for 1989, 1990, 1991, 1992, and 1993, petitioner claimed travel expenses of $4,830, $4,326, $2,721, $3,532, and $3,686, respectively. On audit, respondent determined that petitioners had substantiated travel expenses of $2,525, $4,312, $2,742, $3,479, and $2,870 for 1989, 1990, 1991, 1992, and 1993, respectively. Respondent determined further that some of the substantiated travel expenses did not relate to petitioner's law practice.

From January 26 through February 4, 1989, petitioner took a trip to Minnesota. The airfare for that trip was $298. On audit, respondent determined that the trip was not related to petitioner's law practice but, instead, was related to his investments.

From October 18 through 23, 1989, petitioner and his family took a trip to Salt Lake City, Utah. The total airfare for that trip was $932. On audit, respondent determined that the trip was not related to petitioner's law practice. Respondent further determined that $714 of the expenses had been incurred for medical purposes and the remaining expenses were personal.

From April 12 through 16, 1990, petitioner took a trip to Denver, Colorado. Petitioner's expenses for hotel, parking, and mileage totaled $544. On audit, respondent determined that the trip was not related to petitioner's law practice but, instead, was related to his investments.

From April 28 through May 14, 1991, Mrs. Haeder took a trip to Salt Lake City, Utah. Airfare for that trip was $185. On audit, respondent determined that the trip was personal.

From May 16 through 18, 1991, petitioner and his father took a trip to Minnesota. Expenses for that trip for hotel, airfare, rental car, and gasoline totaled $582. On audit, respondent determined that $192 of those expenses was related to petitioner's law practice. Respondent further determined that $190 of the expenses had been incurred for investment purposes, and the remaining expenses were personal.

From May 29 through June 1, 1991, petitioner and his family took a trip to Newton, Massachusetts, and Boston, Massachusetts. Expenses for hotels, airfare, rental cars, and telephone totaled

$1,497. On audit, respondent determined that the trip was not related to petitioner's law practice. Respondent further determined that $880 of the expenses had been incurred for investment purposes and the remaining expenses were personal.

On September 17, 1991, petitioner took a trip to Boston, Massachusetts. Airfare for that trip was $288. On audit, respondent determined that the trip was not related to petitioner's law practice but, instead, was related to his investments.

From March 19 through 29, 1992, petitioner and his family took a trip to Boston, Massachusetts. Expenses for hotel, airfare, rental car, and gasoline totaled $1,947. On audit, respondent determined that the trip was not related to petitioner's law practice. Respondent further determined that $1,273 of the expenses had been incurred for investment purposes, and the balance of the expenses was personal.

On July 5, 1992, petitioner took a trip to Huron, South Dakota. Expenses for the trip totaled $161. On audit, respondent determined that the trip was not related to petitioner's law practice but, instead, was related to his investments.

From March 21 through 29, 1993, petitioner took a trip to Portland, Oregon. Airfare for that trip was $218. On audit, respondent determined that $109 of the expenses was related to

petitioner's law practice and $109 of the expenses was related to his investments.

From March 29 through April 5, 1993, one of petitioners' daughters took a trip to Portland, Oregon.  Airfare for that trip was $201.  On audit, respondent determined that the trip was undertaken for medical purposes.

From April 22 through May 6, 1993, Mrs. Haeder took a trip to Salt Lake City, Utah.  Airfare for that trip was $198.  On audit, respondent determined that the trip was personal.

From July 1 through 5, 1993, petitioner took a trip to Minnesota.  Expenses for hotel, airfare, and rental car totaled $987.  On audit, respondent determined that $494 of those expenses was related to petitioner's law practice and $493 of those expenses had been incurred for investment purposes.

From July 6 through 7, 1993, petitioner took a trip to Seattle, Washington, and Salt Lake City, Utah.  Airfare for that trip was $373.  On audit, respondent determined that $198 of those expenses related to petitioner's law practice and the balance of those expenses was personal.

From November 11 through 17, 1993, petitioner took a trip to Boston, Massachusetts.  Expenses for hotel, airfare, and car rental totaled $520.  On audit, respondent determined that those expenses were not related to petitioner's law practice but, instead, were incurred for investment purposes.

In the notice of deficiency, respondent allowed petitioners to deduct $65, $3,768, $957, $794, and $1,174 of the substantiated expenses on the Schedules C for 1989, 1990, 1991, 1992, and 1993, respectively.  Respondent also allowed petitioners to deduct $714 and $201 of the substantiated expenses for 1989 and 1993, respectively, as medical expenses on their Schedules A, subject to the statutory limitations.  In addition, respondent allowed petitioners to deduct $298, $544, $1,168, $1,624, and $1,122 of the substantiated expenses for 1989, 1990, 1991, 1992, and 1993, respectively, as investment expenses on their Schedules A, subject to the statutory limitations.

Meal and Entertainment Expenses

On the Schedules C for 1989, 1990, 1991, 1992, and 1993, petitioner claimed meal and entertainment expenses, before statutory limitations, of $2,508, $1,760, $535, $1,302, and $3,046, respectively.  On audit, respondent determined that petitioners had not submitted adequate substantiation for the meal and entertainment expenses claimed.  Nonetheless, respondent allowed petitioner per diem amounts, for travel related to his law practice, for those nights that petitioner verified he was away from home.  Thus, for 1989 respondent allowed petitioner 37 days at $14 per day for a total of $518.  For 1990 respondent allowed petitioner 39 days at $26 per day for a total of $1,014. For 1991 respondent allowed petitioner 5 days at $26 per day for

a total of $130. For 1992 respondent allowed petitioner 7-1/2 days at $26 per day for a total of $195. For 1993 respondent allowed petitioner 14-1/2 days at $26 per day for a total of $416.[6] Respondent disallowed $1,592, $597, $324, $886, and $2,104 of the meal and entertainment expenses claimed on the Schedules C for 1989, 1990, 1991, 1992, and 1993, respectively.

Bad Debt Deduction

During November 1991, Ted Kadrlik (Mr. Kadrlik) asked petitioner to represent him on check fraud charges. Mr. Kadrlik gambled, causing financial hardship for his family. Petitioner declined to represent Mr. Kadrlik, but petitioner agreed to advance Mr. and Mrs. Kadrlik (the Kadrliks) some money. On November 25, 1991, petitioner gave the Kadrliks a check for $300. The check memo line contained the notation "Loan". The Kadrliks did not give petitioner a promissory note relating to the $300 payment. The Kadrliks did not repay the money. Petitioner asked the Kadrliks for the money a few times, but he made no other attempt to collect on the debt. He believed that it would not be appropriate to sue the Kadrliks for collection because of their

---

[6]The parties stipulated that respondent allowed petitioner $416 for 1993 calculated on the basis of $26 per day for 14-1/2 days. Our calculation, however, shows that the meal allowance would be $377 ($26 per day multiplied by 14-1/2 days). The parties do not explain the discrepancy, nor does the record clarify the difference in calculations. In the absence of an explanation, however, we defer to, and accept, the parties' stipulation. See Rule 91(e).

financial difficulties and because petitioner thought suing the Kadrliks might hurt his own reputation in the community.

On petitioner's 1991 Schedule C, petitioner claimed a deduction for a bad debt of $300. In the notice of deficiency, respondent determined that petitioners were not entitled to deduct the bad debt claimed on the 1991 Schedule C because petitioners had not established that a bad debt had arisen from a true debtor-creditor relationship based upon a valid and legally enforceable obligation, or, if it were a valid debt, that the debt had become worthless during the year and all reasonable steps had been taken to collect it.

Repairs Expense

During 1993, petitioner purchased an oriental rug that he intended to use in his office on a rotating basis with another rug he owned. He sent the oriental rug to Portland, Oregon, for appraisal and repairs, totaling $2,956. Petitioner estimated that the appraisal did not cost more than $100. Petitioner chose both of the rugs he intended to use in his office because he expected them to appreciate in value.

On petitioner's 1993 Schedule C, petitioner claimed a repair expense of $2,956. In the notice of deficiency, respondent determined that petitioners were not entitled to deduct the repair expense because petitioner had not established that the repair expense was for an ordinary and necessary business expense

or was expended for the purpose designated and that petitioner had not substantiated the amount.

## Additional Business Income

In the notice of deficiency, respondent determined that during 1989 petitioner received business income of $1,085 from a litigation matter, which petitioners failed to include on their return for that year. Respondent increased petitioner's income accordingly.

## Income From Prizes

During November 1989, petitioner won a laptop computer from JMS Inc., d.b.a. Computerland (Computerland). Petitioner, however, did not want the computer and refused to accept it. Instead of the computer, Computerland gave petitioner a store credit. Petitioners did not include any income attributable to the Computerland prize on their Federal income tax return for 1989. In the notice of deficiency, respondent determined that during 1989 petitioners received income attributable to the Computerland prize of $2,223. Respondent increased petitioners' income for that year accordingly.

## Dividend Income

Respondent determined that for 1992 petitioners overstated income from dividends by $8,732. Respondent reduced petitioners' income for that year accordingly.

Additions to Tax and Penalties

Respondent determined that petitioners were liable for additions to tax under section 6651(a)(1) for 1989 and 1990 because they failed to file timely returns or to show they had reasonable cause for that failure. Respondent also determined that for 1991 and 1992 petitioners were liable for an accuracy-related penalty under section 6662(a) and (b)(1) because the underpayment of tax for those years was due to negligence or the intentional disregard of rules or regulations. Additionally, respondent determined that for 1989, 1990, and 1993 petitioners were liable for an accuracy-related penalty under section 6662(a) and (b)(2) because the underpayment of tax for those years was due to a substantial understatement of their income tax.

OPINION

Section 61(a) provides that gross income means all income from whatever source derived. That section has been interpreted broadly to encompass all gains except those specifically exempted by Congress. See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955).

Section 162(a) permits a taxpayer to deduct expenses paid or incurred during the taxable year in carrying on the taxpayer's trade or business. Deductions are strictly a matter of legislative grace, however, and the taxpayer bears the burden of proving that he or she is entitled to the claimed deductions.

See Rule 142(a);[7] INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111, 115 (1933); Page v. Commissioner, 823 F.2d 1263, 1271 (8th Cir. 1987), affg. in part and dismissing in part T.C. Memo. 1986-275.

Section 162(a) requires a taxpayer to prove that the expenses deducted (1) were paid or incurred during the taxable year, (2) were incurred to carry on the taxpayer's trade or business, and (3) were ordinary and necessary expenditures of the business. See sec. 162(a); Commissioner v. Lincoln Sav. & Loan Association, 403 U.S. 345, 352 (1971). An expense is ordinary if it is customary or usual within a particular trade, business, or industry or relates to a transaction "of common or frequent occurrence in the type of business involved." Deputy v. du Pont, 308 U.S. 488, 495 (1940). An expense is necessary if it is appropriate and helpful for the development of the business. See Commissioner v. Heininger, 320 U.S. 467, 471 (1943). Personal, living, or family expenses, on the other hand, generally are not deductible. See sec. 262(a).

A taxpayer is required to keep adequate records sufficient to enable the Commissioner to determine the taxpayer's correct

---

[7]Contrary to petitioners' assumption, the burden of proof provisions of sec. 7491 do not apply here because the examination in this case began before July 22, 1998. See Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001, 112 Stat. 726.

tax liability. See sec. 6001; Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965). In the absence of persuasive corroborating evidence, we are not required to accept the self-serving testimony of interested parties. See Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 512 (1984); Day v. Commissioner, 975 F.2d 534, 538 (8th Cir. 1992), affg. in part, revg. in part and remanding T.C. Memo. 1991-140; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

With those well-established propositions in mind, we must determine whether petitioners have satisfied their burden of proving that they did not receive the disputed income items and that they are entitled to the disputed deductions.

Wages, IRA Deductions, and Medical Plan Expenses

Petitioner claimed wage expenses and medical plan expenses on his Schedules C for the years in issue relating to payments made to or on behalf of Mrs. Haeder allegedly in her capacity as his employee. Mrs. Haeder reported the salary petitioner paid to her as income from wages on petitioners' joint tax returns for those years and claimed deductions for contributions to an IRA for the years in issue. Respondent disallowed the deductions for wage expenses, IRA contributions, and medical plan expenses. Respondent correspondingly reduced petitioners' income from wages.

Section 162(a)(1) provides that a taxpayer may deduct as an ordinary and necessary expense "a reasonable allowance for salaries or other compensation for personal services actually rendered". Thus, compensation is deductible only if it is reasonable in amount and is paid or incurred for services actually rendered. See sec. 1.162-7(a), Income Tax Regs.[8]

Whether an individual is an employee is essentially a question of fact. See Air Terminal Cab, Inc. v. United States, 478 F.2d 575, 578 (8th Cir. 1973); Packard v. Commissioner, 63 T.C. 621, 629 (1975). Courts generally apply a common law agency test to determine whether an employer-employee relationship exists. See, e.g., Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-324 (1992); Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-752 (1989); Matthews v. Commissioner, 92 T.C. 351, 360 (1989), affd. 907 F.2d 1173 (D.C. Cir. 1990). Moreover, where a family relationship is involved, the facts require close scrutiny to determine whether a bona fide employer-employee relationship existed and whether the payments received were made

---

[8]Whether amounts paid as wages are reasonable compensation for services rendered is a question of fact to be decided on the basis of the facts and circumstances of each case. See Charles Schneider & Co. v. Commissioner, 500 F.2d 148, 151 (8th Cir. 1974), affg. T.C. Memo. 1973-130; Eller v. Commissioner, 77 T.C. 934, 962 (1981); Home Interiors & Gifts, Inc. v. Commissioner, 73 T.C. 1142, 1155 (1980); see also Martens v. Commissioner, T.C. Memo. 1990-42, affd. without published opinion 934 F.2d 319 (4th Cir. 1991).

on account of the employer-employee relationship or the family relationship. Cf. Denman v. Commissioner, 48 T.C. 439 (1967); Shelley v. Commissioner, T.C. Memo. 1994-432; Martens v. Commissioner, T.C. Memo. 1990-42, affd. without published opinion 934 F.2d 319 (4th Cir. 1991); Jenkins v. Commissioner, T.C. Memo. 1988-292, affd. without published opinion 880 F.2d 414 (6th Cir. 1989); Furmanski v. Commissioner, T.C. Memo. 1974-47. In this case, petitioner must prove that Mrs. Haeder was his bona fide employee during the years in issue and, if so, that any expenses claimed with respect to her alleged employment were reasonable in amount and paid for services she actually rendered as an employee.

Section 1.162-10(a), Income Tax Regs., includes expenditures for "a sickness, accident, hospitalization, medical expense, * * * or similar benefit plan" among examples of deductible business expenses "if they are ordinary and necessary expenses of the trade or business." See also Smith v. Commissioner, T.C. Memo. 1970-243. In addition, section 105(b) generally allows an employee to exclude from gross income amounts received from an employer for expenses of medical care, as defined in section 213(d), of the employee, the employee's spouse, or his or her dependents. Petitioner must prove that the medical plan expenses claimed on the Schedules C for the years in issue were ordinary and necessary expenses paid pursuant to a medical expense plan.

In order to satisfy that burden, petitioners must establish that Mrs. Haeder was petitioner's bona fide employee for the years in issue, that the reimbursement of medical expenses was an ordinary and necessary business expense, and that petitioners paid the expenses during the applicable year.

Section 219(a) allows a deduction from gross income for qualifying contributions to an IRA, subject to certain limitations and restrictions. The maximum allowable deduction is limited to the lesser of $2,000 or the amount of compensation includable in the individual's gross income for the taxable year. See sec. 219(b)(1). In order to establish that Mrs. Haeder was entitled to the IRA deduction for each year in issue, petitioners must prove that Mrs. Haeder had compensation includable in income for the respective years.

The deductions for wage expenses, IRA contributions, and medical plan expenses require proof, in the first instance, that Mrs. Haeder was petitioner's employee during the years in issue. Petitioners maintain that Mrs. Haeder was petitioner's employee and performed many valuable services for petitioner relating to his law practice, including secretarial, clerical, bookkeeping, and cleaning services. Petitioner contends that Mrs. Haeder's duties were substantial, necessary, and continuing throughout the years. Petitioners concede that petitioner had few clients during the early years after their move to South Dakota. They

contend, however, that petitioner spent much of his time out in the community, meeting people and volunteering his services. They assert that, during petitioners' early years in South Dakota, Mrs. Haeder was indispensable to petitioner's law practice because she stayed at home to answer the telephone, greet visitors, type and file legal documents, and keep petitioner's records.

Respondent contends that Mrs. Haeder was not petitioner's employee during the years in issue. Respondent asserts that the activities performed by Mrs. Haeder were duties normally performed by family members living in the same home, and they do not constitute the duties of an employee.

Our review of the record in this case confirms that petitioners have not shown that Mrs. Haeder provided services as petitioner's employee during the years in issue. Mrs. Haeder did not testify as to the extent or nature of any services she purportedly rendered in connection with petitioner's law practice. Petitioner's testimony relating to Mrs. Haeder's purported services was vague, generalized, and conclusory. The record contains no specific or convincing evidence regarding clerical or secretarial services Mrs. Haeder actually performed in connection with petitioner's law practice.

In their briefs, petitioners contend that during the audit petitioner showed the IRS auditor numerous documents that Mrs.

Haeder had worked on for petitioner.[9]  Petitioners, however, presented none of those documents at trial.  In fact, petitioner did not offer into evidence any documentation of the work Mrs. Haeder purportedly performed or of the time she purportedly spent performing services for his law practice during the years in issue.  The record is devoid of credible evidence establishing that Mrs. Haeder performed any services other than those reasonably expected of a family member.  We are not required to accept petitioner's self-serving, uncorroborated testimony that Mrs. Haeder performed substantial and continuing clerical and secretarial services for him during the years in issue.  See <u>Bose Corp. v. Consumers Union of U.S., Inc.</u>, 466 U.S. at 512; <u>Day v. Commissioner</u>, 975 F.2d at 538; <u>Geiger v. Commissioner</u>, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 212 (1992).

Other evidence in the record supports respondent's position that Mrs. Haeder did not serve as petitioner's employee during the years in issue.  For example, except for 1993, petitioner did not issue Mrs. Haeder a Form W-2, Wage and Tax Statement. Furthermore, petitioner did not pay Mrs. Haeder "wages" on a

---

[9]This Court does not consider statements in briefs as proof. See Rule 143(b); <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 214 n.7 (1992); <u>Viehweg v. Commissioner</u>, 90 T.C. 1248, 1255 (1988); <u>Evans v. Commissioner</u>, 48 T.C. 704, 709 (1967), affd. 413 F.2d 1047 (9th Cir. 1969).

regular or normal basis (such as weekly, biweekly, or monthly), nor did he pay those wages directly to her. For 1990, 1992, and 1993, petitioner transferred funds directly into Mrs. Haeder's IRA account at yearend. For 1991, petitioner wrote the check payable to himself, Mrs. Haeder endorsed it, and Mrs. Haeder deposited it into her IRA account.

Petitioner determined Mrs. Haeder's purported salary on the basis of the maximum IRA deduction. The record in this case suggests that, for the years in issue, petitioner claimed the purported employer-employee relationship between himself and Mrs. Haeder in an attempt to enable petitioners to deduct personal medical and dental expenses as business expenses and contributions to the IRA account in Mrs. Haeder's name.

In their briefs, petitioners contend that one of respondent's agents audited petitioners' 1988 return and permitted them to deduct similar salary and medical plan expenses claimed on the Schedule C for that year. The record contains no evidence of a prior year's audit. See supra note 9. Even if such proof had been offered, it would have been irrelevant inasmuch as each tax year stands on its own and must be considered separately. See United States v. Skelly Oil Co., 394 U.S. 678, 684 (1969). It is well established that the Commissioner is not bound in any given year to allow a deduction permitted in a previous year. See Lerch v. Commissioner, 877

F.2d 624, 627 n.6 (7th Cir. 1989), affg. T.C. Memo. 1987-295;

Hawkins v. Commissioner, 713 F.2d 347, 351-352 (8th Cir. 1983),

affg. T.C. Memo. 1982-451; Thomas v. Commissioner, 92 T.C. 206,

226-227 (1989); Union Equity Coop. Exch. v. Commissioner, 58 T.C.

397, 408 (1972), affd. 481 F.2d 812 (10th Cir. 1973).

On the basis of the foregoing, we hold that petitioners have not shown that Mrs. Haeder was an employee of petitioner for the years in issue. Consequently, we need not address the question of whether payments made on her behalf during the years were reasonable in amount. Because petitioners have not established that Mrs. Haeder was petitioner's employee during the years in issue, they have failed to prove that the payments made to her or on her behalf are allowable wage expenses on the Schedules C for the years in issue or that payments made pursuant to the purported employee medical expense plan are deductible on the Schedules C for those years. Additionally, they have not established that Mrs. Haeder is entitled to deduct contributions to her IRA account for those years.[10] Accordingly, we sustain respondent's determinations as to those issues.

---

[10]Respondent has determined that petitioners' income for the years in issue should be reduced by the wages allegedly paid to Mrs. Haeder. We agree that respondent's determination is appropriate.

Legal and Professional Expenses

Petitioner claimed deductions on his 1990 and 1991 Schedules C for legal and professional expenses. To the extent substantiated, respondent allowed petitioners to deduct some of the expenses on the Schedules C and, except for $96 for 1990, the remainder on petitioners' Schedules A as tax preparation fees.

Petitioners contend that the legal and professional expenses in dispute for 1990 and 1991 encompass accountant's fees for the preparation of their tax returns and legal fees paid to other lawyers. Petitioners assert that those legal and accountant's fees related to petitioner's law practice.

Respondent contends that petitioners have not established that they are entitled to deductions for legal and professional expenses relating to petitioner's law practice in amounts greater than those already allowed by respondent. We agree. Petitioners offered no proof at trial showing that the items in dispute related to petitioner's law practice as required by section 162. See supra note 9. Thus, petitioners have not established that they are entitled to deductions for legal and professional expenses on the Schedules C in amounts greater than those already allowed by respondent. Petitioners also have not shown that they are entitled to amounts for legal and professional expenses on the Schedules A in amounts greater than

those allowed by respondent.  Accordingly, we sustain respondent's determination on this issue.

Travel, Meal, and Entertainment Expense Deductions

Petitioner claimed deductions on his Schedules C for the years in issue for travel, meal, and entertainment expenses.  To the extent substantiated, respondent allowed deductions for a portion of the travel and meal expenses on the Schedules C and a portion of those expenses on petitioners' Schedules A as medical expenses or investment-related expenses.  Respondent did not allow petitioner to deduct the balance of the claimed travel, meal, and entertainment expenses because those expenditures were unsubstantiated or personal.

When a taxpayer establishes that he paid or incurred a deductible business expense, but does not establish the amount of the deduction, the Court may estimate the amount allowable in some circumstances.  See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), affg. 11 B.T.A. 743 (1928).  There must be sufficient evidence in the record, however, to permit the Court to conclude that a deductible expense was incurred in at least the amount allowed.  See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).  In estimating the amount allowable, the Court bears heavily upon the taxpayer whose inexactitude is of his or her own making.  See Cohan v. Commissioner, supra at 544.

Section 274(d) imposes additional stringent substantiation requirements for certain kinds of business expenses, such as travel, meal, and entertainment expenses. The substantiation requirements of section 274(d) supersede the rule of Cohan v. Commissioner, supra. See Sanford v. Commissioner, 50 T.C. 823, 828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); Kim v. Commissioner, T.C. Memo. 1999-261, affd. without published opinion 215 F.3d 1319 (4th Cir. 2000); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Under section 274(d), a taxpayer must substantiate the amount, time, place, and business purpose of the expenditures with adequate records or sufficient evidence corroborating his or her own statement. See sec. 1.274-5T(b) and (c), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). If a taxpayer is unable to fulfill the requirements of section 274(d), then he or she is not entitled to the deduction.

Petitioners do not address the travel, meal, and entertainment expense issues in their briefs. The parties, however, stipulated facts relating to the travel expenses. In addition, the travel, meal, and entertainment expense issues are specifically identified in the stipulation of agreed adjustments as disputed adjustments. Under those circumstances, we decline to treat petitioners' failure to address the issue as a

concession or abandonment of the issue.  See Rule 151(e)(5);
Lencke v. Commissioner, T.C. Memo. 1997-284.

Our review of the record convinces us that petitioners have
failed to satisfy the stringent substantiation requirements of
section 274(d) as to any travel, meal, and entertainment expenses
not allowed by respondent.  Accordingly, we hold that petitioners
are not entitled to additional deductions for travel, meal, and
entertainment expenses beyond the amounts allowed by respondent
or as stipulated by the parties.

Bad Debt Deduction

Petitioner claimed a deduction on his Schedule C for 1991
for a bad debt.  Petitioners contend that petitioner is entitled
to deduct the payment as an expense of his law practice.

Respondent contends that petitioner gave $300 to family
friends and that the payment did not create a bona fide debtor-
creditor relationship.  Respondent also contends that petitioners
have not shown that, if the payment was a valid debt, it became
worthless during 1991.

Section 166(a) authorizes a deduction for a business bad
debt that becomes worthless during the year.[11]  To be entitled to

_____

[11]Sec. 166 distinguishes between business and nonbusiness
bad debts.  Nonbusiness bad debts of taxpayers other than
corporations are short-term capital losses.  See sec.
166(d)(1)(B).  A nonbusiness debt is a debt other than "(A) a
debt created or acquired (as the case may be) in connection with
a trade or business of the taxpayer; or (B) a debt the loss from
(continued...)

the deduction, an individual taxpayer must prove (1) that bona fide debt was created obligating the debtor to pay the taxpayer a fixed or determinable sum of money, (2) that the bad debt was created or acquired in proximate relation to the taxpayer's trade or business, and (3) that the debt became worthless in the year claimed. See United States v. Generes, 405 U.S. 93, 96 (1972); Calumet Indus., Inc. v. Commissioner, 95 T.C. 257, 284 (1990).

Petitioner admitted that the payment to the Kadrliks actually was in the nature of a personal loan. Petitioners, however, submitted no proof that the debt became worthless during 1991 or a later year. Consequently, we hold that petitioners have failed to prove that they are entitled to deduct the payment to the Kadrliks as a business bad debt or as a short-term capital loss for 1991. Accordingly, we sustain respondent's determination on this issue.

Repairs Expense

Respondent disallowed petitioner's deduction for repairs to an oriental rug petitioner purchased in 1993 for periodic use in his office because petitioner did not establish that the expenditure was an ordinary and necessary business expense.

---

[11](...continued)
the worthlessness of which is incurred in the taxpayer's trade or business." Sec. 166(d)(2); see also sec. 1.166-5(b), Income Tax Regs.

Expenditures paid or incurred for regular maintenance to keep property used in a trade or business in an ordinarily efficient operating condition are currently deductible. See Plainfield-Union Water Co. v. Commissioner, 39 T.C. 333, 337 (1962); secs. 1.162-4, 1.263(a)-1(b), Income Tax Regs.; see also Ingram Indus., Inc. v. Commissioner, T.C. Memo. 2000-323. Conversely, expenditures that constitute replacements, alterations, improvements, or additions that prolong the life of the property, increase its value, or make it adaptable to a different use generally constitute capital expenditures that are not currently deductible. See sec. 263(a); sec. 1.263(a)-1(a) and (b), Income Tax Regs.; see also Illinois Merchants Trust Co. v. Commissioner, 4 B.T.A. 103, 106 (1926). In order to establish they are entitled to deduct the repairs expense, petitioners must show that the purpose of the expenditure was merely to keep the rug in an ordinarily efficient operating condition and that those repairs did not make the rug more valuable or more useful or appreciably prolong its life. See Plainfield-Union Water Co. v. Commissioner, supra; Illinois Merchants Trust Co. v. Commissioner, supra; Ingram Indus., Inc. v. Commissioner, supra.

Petitioners contend that the repairs were necessary to maintain the usefulness of the rug and that they did not substantially prolong the rug's useful life. Respondent contends that petitioners used the rug in their personal residence and

that they failed to establish any connection between the use of the rug and petitioner's law practice. In addition, respondent contends that petitioners have not shown that the expense was an ordinary and necessary business expense.[12]

Petitioners purchased the rug during 1993 and had it appraised and repaired that same year. The fact that petitioners had the rug appraised and repaired in the year of purchase suggests that those repairs were part of their capital investment in the rug. Cf. Stoeltzing v. Commissioner, 266 F.2d 374 (3d Cir. 1959), affg. T.C. Memo. 1958-111; Bloomfield S.S. Co. v. Commissioner, 33 T.C. 75 (1959); Jones v. Commissioner, 24 T.C. 563 (1955), affd. 242 F.2d 616 (5th Cir. 1957); L.A. Wells Constr. Co. v. Commissioner, 46 B.T.A. 302 (1942), affd. per curiam 134 F.2d 623 (6th Cir. 1943); H. Wilensky & Sons Co. v. Commissioner, 7 B.T.A. 693 (1927). Petitioners offered no evidence regarding the condition of the rug before and after it was repaired, nor did they prove what effect the repairs had on the value of the rug. Petitioners have not carried their burden of proving that the expenditure was an ordinary and necessary expense of carrying on petitioner's law practice. Accordingly, we sustain respondent's determination.

_____

[12]Respondent also argues that, to the extent the expense is allowable, the expenditure is a capital expenditure that should be added to the basis of the rug.

Additional Business Income

Respondent determined that petitioner received $1,085 in business income that was not included in income on petitioners' 1989 Federal income tax return.[13] In a stipulation of agreed adjustments filed with this Court after the trial, the parties identified the omission of that income as a disputed adjustment, but petitioners did not address this issue in their briefs. Accordingly, we treat the additional business income issue as conceded by petitioners, and we sustain respondent's determination as to this income item. See Rule 151(e)(4) and (5); Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989); Money v. Commissioner, 89 T.C. 46, 48 (1987).

Income From Prizes

Respondent determined that for 1989 petitioners failed to include in income $2,223 attributable to a prize that petitioner won during that year.[14] Petitioners do not dispute that petitioner won a laptop computer during 1989 or that the store

_____

[13]At trial, petitioner stated that the issue was not in dispute but commented further that he did not know whether the income was received. At that time, we declined to conclude that petitioners had conceded the issue, and we permitted them the opportunity to offer evidence on the matter. Petitioners presented no evidence relating to this issue at trial.

[14]The record is silent as to whether the value of the Computerland prize determined by respondent in the notice of deficiency was based on a Form 1099 or some other information and whether the amount determined by respondent reflected the retail value of the computer, the amount of store credit issued to petitioner by Computerland, or something else.

issued to him a store credit in lieu of the computer. Nonetheless, petitioners contend that their income should not be increased by the value of the prize because the computer had no economic value or benefit to petitioner and because they never used all of the store credit.

Generally, gross income includes prizes and awards received by a taxpayer during the year. See sec. 74(a); Hornung v. Commissioner, 47 T.C. 428, 435-436 (1967); McCoy v. Commissioner, 38 T.C. 841, 843 (1962); sec. 1.74-1(a)(1), Income Tax Regs. When the prize awarded is not money but goods or services, the fair market value of those goods or services is the amount to be included in income. See McCoy v. Commissioner, supra; Wade v. Commissioner, T.C. Memo. 1988-118; sec. 1.74-1(a)(2), Income Tax Regs. We have noted:

> In valuing taxable prizes and awards for Federal income tax purposes, courts do not always adopt the same methodology. In some situations, the retail value of prizes and awards is used. In other situations, a wholesale or other discounted value is used. Objective factors are emphasized, but subjective factors also are given weight in determining the value of prizes and awards to particular taxpayers. [Wade v. Commissioner, supra; citations omitted.]

Petitioners deny that the fair market value of the prize petitioner actually received was $2,223. In their briefs, petitioners maintain that petitioner and Computerland never agreed on the "retail value" of the prize and that petitioner "received a carefully hedged 'retail' value for the prize, but

not the prize itself." Petitioners contend that petitioner never redeemed the entire prize, and, therefore, he never received the value of the prize. Petitioner testified that the amount petitioners should have to include in income from the prize should be no more than 60 percent of the retail price of the computer.

The record contains no credible evidence showing the fair market value of the laptop computer or the amount of the store credit petitioner received from Computerland during 1989. In particular, no credible evidence was offered to show that the amount determined by respondent as income from prizes exceeded the amount of the store credit that petitioner admits he negotiated and received from Computerland in 1989 in lieu of receiving the laptop computer. Petitioners have the burden of proving that the value of the prize was less than the amount determined by respondent.[15] See Rule 142(a); Commissioner v.

---

[15]Although neither party raised the issue, sec. 6201(d), as amended by the Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 602(a), 110 Stat. 1452, 1463 (1996), became effective on July 30, 1996, and applies to judicial proceedings filed on or after that date. Sec. 6201(d) provides that if the taxpayer in a court proceeding asserts a reasonable dispute with respect to income reported on an information return and fully cooperates with the Commissioner by providing, within a reasonable period of time, access to and inspection of all witnesses, information, and documents within the control of the taxpayer as reasonably requested, the Commissioner shall have the burden of providing reasonable and probative information regarding the disputed deficiency in addition to the information return. In this case, even if petitioners had shown that the income attributable to the Computerland prize was reported on a Form 1099 and had asserted

(continued...)

Glenshaw Glass Co., 348 U.S. 426 (1955). Petitioners have failed to do so. Accordingly, we sustain respondent's determination.

Dividend Income

Respondent determined that for 1992 petitioners overstated their dividend income by $8,732. At trial, petitioner appeared to concede this issue. In the stipulation of agreed adjustments filed with the Court after trial, however, the parties included this item in the list of adjustments still at issue.

Petitioners nevertheless failed to address this issue in their briefs. Accordingly, we treat the dividend income issue as conceded by petitioners, and we sustain respondent's determination on this issue. See Rule 151(e)(4) and (5); Petzoldt v. Commissioner, 92 T.C. at 683; Money v. Commissioner, 89 T.C. at 48.

Additions to Tax for Failure To Timely File Tax Returns

Respondent determined that for 1989 and 1990 petitioners were liable for additions to tax under section 6651(a)(1) because they failed to file timely returns or to show that they had

---

[15](...continued)
that the burden of production regarding the Computerland prize should shift to respondent under sec. 6201(d), petitioner offered no evidence that he fully cooperated with respondent, and the record in this case supports a conclusion that petitioner did not fully cooperate with the Commissioner as required by sec. 6201(d). See Ketler v. Commissioner, T.C. Memo. 1999-68; Andrews v. Commissioner, T.C. Memo. 1998-316; Hardy v. Commissioner, T.C. Memo. 1997-97, affd. 181 F.3d 1002 (9th Cir. 1999).

reasonable cause for that failure. Petitioners do not deny that the returns were not timely filed.

Section 6651(a)(1) imposes an addition to tax for failure to file a return unless it is shown that such failure is due to reasonable cause and not due to willful neglect. See sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985). A failure to file a timely Federal income tax return is due to reasonable cause if the taxpayer exercised ordinary business care and prudence and, nevertheless, was unable to file the return within the prescribed time. See Crocker v. Commissioner, 92 T.C. 899, 913 (1989); sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Willful neglect means a conscious, intentional failure to file or reckless indifference. See United States v. Boyle, supra at 245.

Petitioners did not address this issue at trial or in their briefs. Accordingly, we treat this issue as conceded by petitioners, and we sustain respondent's determination on the additions to tax for failure to timely file a return. See Rule 151(e)(4) and (5); Petzoldt v. Commissioner, supra at 683; Money v. Commissioner, supra at 48.

Accuracy-Related Penalties for Negligence

Respondent determined that for 1991 and 1992 petitioners were liable for accuracy-related penalties for negligence. Petitioners assert that their actions were not negligent.

Section 6662(a) and (b)(1) imposes an accuracy-related penalty in the amount of 20 percent of any portion of an underpayment attributable to negligence or disregard of rules or regulations. The term "negligence" is defined in section 6662(c) as "any failure to make a reasonable attempt to comply with the provisions of this title". "Negligence connotes a lack of due care or a failure to do what a reasonable and prudent person would do under the circumstances." Bunney v. Commissioner, 114 T.C. 259, 266 (2000); see also Allen v. Commissioner, 925 F.2d 348, 353 (9th Cir. 1991), affg. 92 T.C. 1 (1989); Freytag v. Commissioner, 89 T.C. 849, 887 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. See sec. 1.6662-3(b)(1), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

Section 6664(c)(1) provides that the accuracy-related penalty shall not be imposed with respect to any portion of an underpayment if it is shown that a taxpayer acted in good faith and that there was reasonable cause for the underpayment. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case by case basis, taking into account all pertinent facts and circumstances. See Compaq

Computer Corp. v. Commissioner, 113 T.C. 214, 226 (1999); sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners contend that they are not liable for the accuracy-related penalties for negligence because they relied on their accountant for the preparation of their returns. Thus, in effect, petitioners argue that they had reasonable cause and acted in good faith by treating the items as they did on their returns for 1991 and 1992. Petitioners bear the burden of proving facts showing good faith and reasonable cause. See Rule 142(a).

Although a taxpayer may avoid liability for the addition to tax for negligence if he or she shows a reasonable reliance in good faith on a competent and experienced return preparer, reliance on professional advice, standing alone, is not an absolute defense to negligence. See United States v. Boyle, supra at 250-251; Freytag v. Commissioner, supra at 888; see also sec. 1.6664-4(b)(1), Income Tax Regs. Rather, it is a factor to be considered. See Freytag v. Commissioner, supra at 888. To show good faith reliance on the advice of a competent adviser, the taxpayer must establish that he or she provided the return preparer with complete and accurate information and that an incorrect return was a result of the preparer's mistakes. See Westbrook v. Commissioner, 68 F.3d 868, 881 (5th Cir. 1995),

affg. T.C. Memo. 1993-634; <u>Weis v. Commissioner</u>, 94 T.C. 473, 487 (1990); <u>Ma-Tran Corp. v. Commissioner</u>, 70 T.C. 158, 173 (1978).

Petitioner did not testify that he supplied Mr. Fuller, who prepared the returns for 1991 and 1992, with complete and accurate information or that the incorrect reporting of the disputed items was a result of the preparer's mistakes. Additionally, Mr. Fuller did not testify that the incorrect reporting of the items adjusted by respondent was a result of his mistakes.[16]  Moreover, with respect to the deductions claimed for wage expense, medical plan expenses, and IRA contributions, the record fails to show that either petitioner or Mr. Fuller engaged in any factual or legal analysis to determine whether Mrs. Haeder qualified as petitioner's employee.  Petitioners, therefore, have failed to establish that the underpayment for the years in issue resulted from their good faith reliance on the advice of their tax preparer.  Accordingly, petitioners have failed to carry their burden, and we sustain respondent's determination as to the accuracy-related penalties.

## Accuracy-Related Penalties for Substantial Understatements of Tax

Respondent determined that for 1989, 1990, and 1993 petitioners were liable for accuracy-related penalties under

_____

[16]Although Mr. Fuller testified at trial that he incorrectly reported commissions refunded in 1990 in connection with petitioner's investment in Floating Point stock and overstated dividend income in 1992, these items either are not at issue in this case or do not affect adversely to petitioners the calculation of the deficiencies.

section 6662(a) because the underpayment of tax for those years was due to a substantial understatement of their income tax. Petitioners contend that they are not liable for the accuracy-related penalties for substantial understatement of income tax.

Section 6662(a) and (b)(2) imposes a penalty equal to 20 percent of the portion of an underpayment attributable to any substantial understatement of tax. A substantial understatement occurs when the amount of the understatement exceeds the greater of 10 percent of the amount of tax required to be shown on the return or $5,000 ($10,000 for corporations). See sec. 6662(d)(1). The amount of an understatement on which the penalty is imposed will be reduced by the portion of the understatement that is attributable to the tax treatment of an item (1) that was supported by "substantial authority" or (2) for which the relevant facts were "adequately disclosed in the return or in a statement attached to the return." Sec. 6662(d)(2)(B).[17] Additionally, no penalty will be imposed with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and the taxpayer acted in good faith with respect to such portion. See sec. 6664(c)(1).

Petitioners do not contend that they have substantial authority for the tax treatment of the items that we have

---

[17]For 1993 and later years, adequate disclosure must be coupled with "a reasonable basis for the tax treatment". See sec. 6662(d)(2)(B)(ii).

addressed in this opinion or that they adequately disclosed all relevant facts as to the tax treatment of those items on their returns.  Rather, they contend only that they relied on their accountant for the preparation of their returns.  Thus, in effect, petitioners argue that they had reasonable cause and acted in good faith in treating the items as they did on their returns.

As we discussed above in relation to the accuracy-related penalty for negligence, petitioners have failed to establish that the overstatement of deduction items or the understatement of income items that they conceded before or after trial or that we addressed in this opinion resulted from a good faith reliance on the advice of their tax preparer.  Consequently, they have failed to carry their burden of proving that they are not liable for the accuracy-related penalty for substantial understatements of income for 1989, 1990, or 1993.  Accordingly, we sustain respondent's determination to the extent the Rule 155 computation for 1989, 1990, and 1993 indicates a substantial understatement of petitioners' income tax within the meaning of section 6662(d).

Conclusion

We have carefully considered all remaining arguments made by petitioners for a result contrary to that expressed herein and, to the extent not discussed above, find them to be irrelevant or without merit.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.