T.C. Memo. 2008-191

UNITED STATES TAX COURT

WILLIAM G. HOLSINGER AND JOANN MICKLER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15563-06.                    Filed August 11, 2008.

<u>V. Jean Owens</u> and <u>James S. Eggert</u>, for petitioners.

<u>Stephen R. Takeuchi</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined deficiencies of
$54,462 and $43,423 in petitioners' 2001 and 2002 Federal income
taxes, respectively.  Respondent amended his answer and increased
petitioners' 2001 deficiency by $20,278, for a total 2001
deficiency of $74,740.  After concessions by both parties, the
issues for decision are:  (1) Whether losses from purchases and

sales of securities are deductible by petitioners as ordinary losses or are instead subject to the limitations applicable to capital losses; and (2) whether expenses attributable to those purchases and sales are deductible by petitioners as business expenses or are instead subject to the limitations applicable to itemized deductions.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time they filed the petition, petitioners resided in Florida.

William Holsinger (petitioner) retired in 1992, having worked approximately 30 years for Eli Lilly & Co. In 1999 petitioners married. In 2000 petitioners began buying and selling stocks, earning approximately $280,000 from that source during 2000. Petitioner opened brokerage accounts in his name, using his Social Security number. Petitioners reported their trading[1] income as capital gains in 2000.

On April 19, 2001, petitioners incorporated Alpha Trading Co. of Sarasota, L.L.C. (Alpha) under the laws of Florida. Petitioner owns 67 percent of Alpha, and petitioner Mickler owns the remaining 33 percent. On or about May 17, 2001, Alpha made a

---

[1] The use of the term "trading income" is not a conclusion that petitioners or Alpha were engaged in a business of trading in securities.

timely election pursuant to section 475(f) to use the mark-to-market method of accounting.[2]

Petitioners maintained two trading accounts with E-Trade, two with Options Xpress, and one with Ameritrade-Comdisco. From April 19 until December 31, 2001, petitioners executed approximately 289 trades on their various trading accounts. In 2002 petitioners executed approximately 372 trades.

In 2001 petitioners claimed an ordinary loss of $180,174[3] from Alpha on their 2001 Schedule E, Supplemental Income and Loss. The loss consists of trading losses of $178,870, depreciation of $1,284, and interest of $40. The aggregate cost or other basis of the securities sold in 2001 was $933,147. The sale prices in 2001 collectively were $754,277. Also in 2001 petitioners claimed a net loss of $80,100 on their Schedule C, Profit or Loss From Business. Respondent disallowed the $80,100 as business expenses but allowed itemized deductions for investment interest of $7,620 and miscellaneous deductions of

---

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3] The 2001 ordinary loss petitioners claimed on Schedule E is $20 less than the total claimed of the trading losses, depreciation, and interest. Both parties have stipulated the amounts, and there appears to be no explanation for the $20 discrepancy. The $20 discrepancy has no effect as to the outcome of the case.

$72,480. After adjustments for gross income limitations, respondent allowed net itemized deductions of $69,153.

In 2002 petitioners claimed an ordinary loss of $45,521. This loss comprises $11,227 in trading losses related to Alpha and $34,294 in claimed business expenses related to Alpha. Respondent disallowed the $34,294 as business expenses but allowed a net itemized deduction of $26,181.

After petitioner incorporated Alpha, he did not switch the name on his trading accounts. Petitioner's Social Security number also remained on the trading accounts. Petitioners continued to trade stocks and options during 2001 and 2002 with the accounts they had used before the incorporation of Alpha. In December 2002 petitioners had one trading account in Alpha's name. During the years in issue petitioners used five accounts to conduct trades.

Petitioners traded from a room in their house. The room contained computers with Internet access in order for petitioners to trade and do research. Additionally, petitioner had four monitors connected to his computer because he wanted to be able to trade and track different investments and potential investments simultaneously. Petitioner purchased the computer equipment around July 1, 2000, before incorporating Alpha. None of the computer equipment was transferred to Alpha.

OPINION

## I. Mark-to-Market Election

Respondent concedes that Alpha made a timely mark-to-market election pursuant to section 475(f). Section 475(f) applies only to those engaged in a trade or business as traders in securities. Having made a timely election, if Alpha were a trader in securities, it would be eligible to recognize gain or loss on any security held in connection with such a trade or business at the close of any taxable year as if the security were sold at its fair market value on the last business day of the taxable year. See sec. 475(f)(1)(A)(I). In general any gains or losses with respect to the securities, whether deemed sold at yearend under the mark-to-market method of accounting or actually sold during the taxable year, shall be treated as ordinary income or loss. Sec. 475(d)(3)(A)(I). If Alpha is considered an investor in securities, the 2001 and 2002 net losses from the purchases and sales of securities would be capital losses and only partially deductible to petitioners.

## II. Trade or Business

The Internal Revenue Code does not define the term "trade or business" for purposes of section 162. Commissioner v. Groetzinger, 480 U.S. 23, 27 (1987); Estate of Yaeger v. Commissioner, 889 F.2d 29, 33 (2d Cir. 1989), affg. T.C. Memo. 1988-264. Whether activities constitute a trade or business is a

question of fact. See <u>Higgins v. Commissioner</u>, 312 U.S. 212, 217 (1941); <u>Estate of Yaeger v. Commissioner</u>, <u>supra</u> at 33; <u>Mayer v. Commissioner</u>, T.C. Memo. 1994-209; <u>Paoli v. Commissioner</u>, T.C. Memo. 1991-351. Petitioners have neither claimed nor shown that they satisfied the requirements of section 7491(a) to shift the burden of proof to respondent with regard to any factual issue. Accordingly, petitioners bear the burden of proof. See Rule 142(a).

Petitioners argue that they were traders, trading as agents of Alpha. With the incorporation of Alpha, petitioners argue they became traders. In determining whether a taxpayer's trading activity constituted a trade or business, courts have distinguished between "traders" and "investors". <u>Moller v. United States</u>, 721 F.2d 810, 813 (Fed. Cir. 1983); see also <u>Levin v. United States</u>, 220 Ct. Cl. 197, 597 F.2d 760, 765 (1979).

In determining whether a taxpayer is a trader, nonexclusive factors to consider are: (1) The taxpayer's intent, (2) the nature of the income to be derived from the activity, and (3) the frequency, extent, and regularity of the taxpayer's securities transactions. <u>Moller v. United States</u>, <u>supra</u> at 813. For a taxpayer to be a trader the trading activity must be substantial, which means "'frequent, regular, and continuous enough to constitute a trade or business'" as opposed to sporadic trading. <u>Ball v. Commissioner</u>, T.C. Memo. 2000-245 (quoting <u>Hart v.</u>

Commissioner, T.C. Memo. 1997-11).  A taxpayer's activities constitute a trade or business where both of the following requirements are met:  (1) The taxpayer's trading is substantial, and (2) the taxpayer seeks to catch the swings in the daily market movements and to profit from these short-term changes rather than to profit from the long-term holding of investments.  Mayer v. Commissioner, supra.

As to the first requirement, we find petitioners' trading was not substantial.  Courts consider the number of executed trades in a year and the amount of money involved in those trades when evaluating whether a taxpayer's trading activities were substantial.  See, e.g., Mayer v. Commissioner, supra; Paoli v. Commissioner, supra.  In Paoli, the Court held trading activities were substantial when the taxpayers traded stocks or options worth approximately $9 million.  In Mayer, the Court considered over 1,100 executed sales and purchases in each of the years at issue therein to be substantial trading activity.  Trading activity was found to be insubstantial when a taxpayer executed at most 83 purchases and 41 sales in one year and 76 purchases and 30 sales in the second year.  Moller v. United States, supra at 813.  In 2001 petitioners executed approximately 289 trades.  An analysis of petitioners' trading activity reveals that in 2001 they traded on 63 days.  This total represents less than 40 percent of the trading days from April 19, 2001, the day

petitioners incorporated Alpha, until December 31, 2001.  In 2002 petitioners traded on 110 days and executed approximately 372 trades.  This total represents less than 45 percent of the trading days in 2002.  We find it doubtful whether the trades were conducted with the frequency, continuity, and regularity indicative of a business.

As to the second requirement, petitioners have failed to prove that they sought to catch the swings in the daily market movements and to profit from these short-term changes rather than to profit from the long-term holding of investments. Petitioner testified that his goal in forming Alpha was to profit from short-term swings in the market.  Additionally, petitioner testified that he usually closed his account at the end of the day and tried to avoid holding stocks and options overnight.  The documentary evidence, however, paints a different picture.  A list of petitioners' trades shows they rarely bought and sold on the same day.  Furthermore, a significant amount of petitioners' holdings was held for more than 31 days.  As a result, we find that petitioners have not demonstrated that they sought to capture the daily swings in the market.  We find that they were not traders, but investors.  Petitioners' trading pattern is consistent with that of an investor, not of a trader.

III.  <u>Business Expenses</u>

Deductions are a matter of legislative grace, and the taxpayer has the burden of showing entitlement to any deduction claimed.  See Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992).  Taxpayers must substantiate amounts claimed as deductions by maintaining the records necessary to establish such entitlement.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.; see <u>Hradesky v. Commissioner</u>, 65 T.C. 87 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

Petitioners claimed business deductions for 2001 and 2002. Petitioners argue that their trading activity was on behalf of Alpha, not for themselves as individuals.  Petitioners claim they were Alpha's agents and therefore had the authority to conduct trades on its behalf.  Even if petitioners acted on Alpha's behalf, because their activity, as we have already found, did not rise to the level of a business (the business of trading securities), the expenses petitioners attributed to that activity, even if incurred on Alpha's behalf, are not deductible as business expenses.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.