T.C. Memo. 2013-259

UNITED STATES TAX COURT

SHARON NELSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24182-09.                    Filed November 13, 2013.

<u>Joyce Anne Rebhun</u>, for petitioner.

<u>Nathan C. Johnston</u> and <u>Linette B. Angelastro</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined deficiencies of $355,403 and

$307,911 in, and accuracy-related penalties under section 6662(a)[1] of $71,080.60

[1]All section references are to the Internal Revenue Code (Code) in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

**[*2]** and $61,582.20 on, petitioner's Federal income tax (tax) for her taxable years 2005 and 2006, respectively.

The issues remaining for decision for each of the years at issue are:

(1) Did petitioner engage in the trade or business within the meaning of section 162(a) of buying and selling securities for her own account? We hold that she did not.

(2) In the light of our holding with respect to issue (1) above, is petitioner entitled to deduct under section 162(a) certain expenses that remain in dispute and that petitioner claims she paid in buying and selling securities for her own account? We hold that she is not.

(3) Is petitioner liable for the accuracy-related penalty under section 6662(a)? We hold that she is.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner resided in California at the time she filed the petition.

During 2005 and 2006 until at least the time of the trial in this case, petitioner and John Zabasky (Mr. Zabasky), who were not married, lived together.

During 2005 and 2006, petitioner was the sole stockholder of Clear Concepts, Inc. (Clear Concepts), a C corporation, that was engaged in the mortgage

**[*3]** broker business and that had its place of business in Westlake Village, California. During those years, Clear Concepts employed petitioner as a mortgage broker. In return for her services as a mortgage broker, Clear Concepts paid petitioner wages of $266,458 and $49,065 during 2005 and 2006, respectively.

During 2005 and 2006, Mr. Zabasky was the chief executive officer and sole stockholder of SoftEx, Inc. (Mr. Zabasky's SoftEx), a Delaware corporation, that had its place of business on De Soto Avenue in Los Angeles (De Soto Avenue address). At the time of the trial in this case, Mr. Zabasky had been involved in the trading of stocks, bonds, and currencies for approximately 25 years.

During 2005 and 2006, petitioner executed certain trades of certain securities on an investment account that she maintained at TD Ameritrade (petitioner's investment account).[2] During those years, Mr. Zabasky, who had access to petitioner's investment account, also executed certain trades of certain securities on that account. Petitioner had no clients for any of the trades executed on petitioner's investment account during 2005 and 2006.

---

[2]Our use of terms like "trades", "trading", and "trading activity" is not intended to mean or suggest that petitioner was in the trade or business within the meaning of sec. 162(a) of buying and selling securities for her own account.

**[*4]** During 2005, there were a total of 250 available trading days. During that year, 535 trades were executed on petitioner's investment account on a total of 121 days, i.e., on 48.4 percent of the total available trading days in 2005. Of the 535 trades made on petitioner's investment account during 2005, the purchases for 95 of those trades occurred in the one-week period September 27 to October 3. The holding period for the securities traded on petitioner's investment account during 2005 ranged from one day to 48 days. During 2005, there were the following eight periods of at least seven days where no purchases or sales occurred on petitioner's investment account: (1) January 7 to January 19; (2) February 10 to February 16; (3) May 19 to May 25; (4) June 3 to June 9; (5) June 17 to June 28; (6) July 16 to July 25; (7) July 27 to August 8; and (8) November 29 to December 6. The trades executed on petitioner's investment account during 2005 generated $470,472.90 of net short-term capital gain for that taxable year.

During 2006, there were a total of 250 available trading days. During that year, 235 trades were executed on petitioner's investment account on a total of 66 days, i.e., on 26.4 percent of the total available trading days in 2006. The holding period for the securities traded on petitioner's investment account during 2006 ranged from one day to 101 days. During 2006, there were only two trading days

[*5] on which trades were executed on petitioner's investment account during the period January 27 to May 4. Moreover, there were the following seven periods of at least seven days where no purchases or sales occurred on petitioner's investment account during 2006: (1) January 4 to January 25; (2) July 15 to July 25; (3) July 29 to August 15; (4) August 19 to September 4; (5) September 16 to October 4; (6) October 13 to October 23; and (7) December 20 to December 31. The trades executed on petitioner's investment account during 2006 generated $36,852.28 of net short-term capital gain for that taxable year.

Petitioner filed Form 1040, U.S. Individual Income Tax Return, for each of her taxable years 2005 (2005 return) and 2006 (2006 return). Petitioner included Schedule C, Profit or Loss From Business (Schedule C), with each of her 2005 return (2005 Schedule C) and her 2006 return (2006 Schedule C). She described the "Principal business or profession" in her 2005 Schedule C as "Stock Trading/Trader Status" and in her 2006 Schedule C as "Securities Trader/Trader Status". The address that petitioner showed in both of those schedules was the De Soto Avenue address of Mr. Zabasky's SoftEx.

After petitioner filed her 2005 return and shortly before she filed her 2006 return, she submitted to respondent Form 1040X, Amended U.S. Individual

**[\*6]** Income Tax Return, for her taxable year 2005 that respondent did not accept or process (unfiled 2005 amended return). Petitioner included Schedule C (unfiled 2005 Schedule C) with her unfiled 2005 amended return. She described the "Principal business or profession" in that schedule as "Securities Trader/Trader Status/R.E. Professional". The address that petitioner showed in her unfiled 2005 Schedule C was the De Soto Avenue address of Mr. Zabasky's SoftEx.

Petitioner claimed in her 2005 Schedule C, her 2005 unfiled Schedule C, and at trial the following expenses:

| [*7] Expense | Amount Claimed in 2005 Schedule C | Amount Claimed in Unfiled 2005 Schedule C | Amount Claimed At Trial |
|---|---|---|---|
| Advertising | $475 | -0- | -0- |
| Car and truck | 12,620 | -0- | -0- |
| Depreciation and sec. 179 | 5,262 | -0- | $26,698 |
| Interest--other | -0- | $13,338 | 20,759 |
| Legal and professional | 352,000 | 143,536 | -0- |
| Office | 10,150 | 25,861 | [1]5,000 |
| Rent or lease--vehicle | 560 | 27,500 | -0- |
| Rent or lease--other | 59,000 | 38,872 | 32,572 |
| Repairs | 2,500 | 5,518 | -0- |
| Supplies | 24,200 | -0- | -0- |
| Taxes and licenses | 500 | 500 | -0- |
| Travel | 9,700 | 5,505 | -0- |
| Meals and entertainment | 3,850 | 2,052 | -0- |
| Utilities | 23,300 | 7,760 | [2]2,500 |

[1]The parties agree that if we were to find that during 2005 petitioner engaged in the trade or business within the meaning of sec. 162(a) of buying and selling securities for her own account, she would be entitled to $5,000 of "Office" expense.

[2]The parties agree that if we were to find that during 2005 petitioner engaged in the trade or business within the meaning of sec. 162(a) of buying and selling securities for her own account and if we were to sustain her claim that she paid "Rent or lease--other" expenses that are ordinary and necessary expenses within the meaning of that section, she would be entitled to $2,500 of "Utilities" expense.

Petitioner claimed in her 2006 Schedule C and at trial the following expenses:

[*8]

| Expense | Amount Claimed in 2006 Schedule C | Amount Claimed At Trial |
|---|---|---|
| Advertising | $570 | -0- |
| Car and truck | 12,179 | -0- |
| Insurance | -0- | $5,976 |
| Interest--other | -0- | 15,832 |
| Legal and professional | 120,000 | -0- |
| Office | 10,200 | [1]5,000 |
| Rent or lease--vehicle | 600 | 5,164 |
| Rent or lease--other | 66,000 | 60,500 |
| Repairs | 5,000 | -0- |
| Supplies | 27,700 | -0- |
| Taxes and licenses | 750 | [2]740 |
| Travel | 9,550 | -0- |
| Meals and entertainment | 4,150 | -0- |
| Utilities | 46,500 | [3]2,500 |
| Business use of home | 711 | -0- |

[1]The parties agree that if we were to find that during 2006 petitioner engaged in the trade or business within the meaning of sec. 162(a) of buying and selling securities for her own account, she would be entitled to $5,000 of "Office" expense.

[2]The parties agree that if we were to find that during 2006 petitioner engaged in the trade or business within the meaning of sec. 162(a) of buying and selling securities for her own account, she would be entitled to $740 of "Taxes and licenses" expense.

[3]The parties agree that if we were to find that during 2006 petitioner engaged in the trade or business within the meaning of sec. 162(a) of buying and selling securities for her own account and if we were to sustain her claim that she paid "Rent or lease--other" expenses that are ordinary and necessary expenses within the meaning of that section, she would be entitled to $2,500 of "Utilities" expense.

**[\*9]** Respondent issued a notice of deficiency (notice) to petitioner for her taxable years 2005 and 2006. In that notice, respondent determined, inter alia, to disallow all of the expenses totaling $504,217 and $303,910 that petitioner claimed in her 2005 Schedule C and her 2006 Schedule C, respectively. In the notice, respondent also determined, inter alia, that petitioner is liable for the accuracy-related penalty under section 6662(a) for each of her taxable years 2005 and 2006.

## OPINION

Petitioner has the burden of establishing that respondent's determinations in the notice that remain at issue are in error. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and petitioner bears the burden of proving entitlement to any deduction claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). The Code and the regulations thereunder required petitioner to maintain records sufficient to establish the amount of any deduction claimed. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Before turning to the issues that remain for decision, we shall evaluate the evidence that petitioner adduced at trial in support of her position on each of those

[*10] issues. In support of those positions, petitioner relies on her own testimony, the testimony of Mr. Zabasky, and certain documentary evidence.

We found petitioner's testimony to be in certain material respects general, conclusory, vague, self-serving, uncorroborated, and/or not credible. We shall not rely on the testimony of petitioner to establish her position with respect to each of the issues that remain for decision. See, e.g., Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

We found the brief testimony of Mr. Zabasky to be generally credible. However, that testimony did not enable us to sustain petitioner's position on the issue to which that testimony pertained.

We did not find that the documentary evidence on which petitioner relies establishes her position with respect to each of the issues that remain for decision.

We turn now to the issue of whether for each of the years at issue petitioner was engaged in the trade or business within the meaning of section 162(a) of buying and selling securities for her own account. A person who purchases and sells securities may be a trader, a dealer, or an investor. See King v. Commissioner, 89 T.C. 445, 458-459 (1987). Neither party maintains that petitioner is a dealer. The parties' dispute is over whether petitioner was a trader, as petitioner maintains, or an investor, as respondent maintains.

[*11] A trader engages in the trade or business for purposes of section 162(a) of selling securities for his or her own account.[3] See King v. Commissioner, 89 T.C. at 458-459. The profits of a trader are generated through the acts of trading themselves. See Estate of Yaeger v. Commissioner, 889 F.2d 29, 33 (2d Cir. 1989), aff'g T.C. Memo. 1988-264. Although an investor purchases and sells securities for his or her own account, an investor, unlike a trader, is not considered to be in the trade or business within the meaning of section 162(a) of selling securities. See Endicott v. Commissioner, T.C. Memo. 2013-199, at *11; Kay v. Commissioner, T.C. Memo. 2011-159, 2011 Tax Ct. Memo LEXIS 156, at *6.

The expenses of a trader that otherwise satisfy the requirements of section 162(a) are deductible under that section. See Endicott v. Commissioner, at *12; Kay v. Commissioner, 2011 Tax Ct. Memo LEXIS 156, at *6. The expenses of an investor that otherwise satisfy the requirements of section 212 are deductible under that section as itemized deductions that are subject to the two-percent floor imposed by section 67(a). Moreover, section 163(d) limits the deductibility of investment interest. See Endicott v. Commissioner, at *12; Arberg v. Commissioner, T.C. Memo. 2007-244, 2007 Tax Ct. Memo LEXIS 253, at *33.

---

[3]Our use hereinafter of the term "trader" refers to a trader who, as discussed below, engages in the trade or business within the meaning of sec. 162(a) of selling securities for his or her own account.

**[*12]** In the brief that petitioner's counsel of record signed and filed on petitioner's behalf, petitioner and that counsel rely on the Web site of the Internal Revenue Service (IRS), i.e., www.irs.gov, to support petitioner's position that she was a trader for each of her taxable years 2005 and 2006. That Web site, like IRS publications, is not an authoritative source of tax law. See Zimmerman v. Commissioner, 71 T.C. 367, 371 (1978), aff'd without published opinion, 614 F.2d 1294 (2d Cir. 1979). We found petitioner's brief, like her testimony, to be unreliable.

The Code does not define the term "trade or business" for purposes of section 162(a). See Commissioner v. Groetzinger, 480 U.S. 23, 27 (1987). The determination of whether a taxpayer's activities qualify as a trade or business is a question of fact. See Higgins v. Commissioner, 312 U.S. 212, 217 (1941). In determining whether a taxpayer is a trader, we shall consider, inter alia, the following factors: (1) the taxpayer's intent, (2) the nature of the income to be derived from the activity, and (3) the frequency, extent, and regularity of the taxpayer's transactions. See Moller v. United States, 721 F.2d 810, 813 (Fed. Cir. 1983); Endicott v. Commissioner, at *13.

For a taxpayer to be a trader, the trading activity must be substantial. In other words, the trading activity must be frequent, regular, and continuous enough

**[*13]** to qualify as a trade or business within the meaning of section 162(a).  See

Endicott v. Commissioner, at *13; Ball v. Commissioner, T.C. Memo. 2000-245,

2000 Tax Ct. Memo LEXIS 289, at *4.

A taxpayer's trading activities constitute a trade or business within the

meaning of section 162(a) where both of the following requirements are satisfied:

(1) the taxpayer's trading is substantial, and (2) the taxpayer seeks to catch the

swings in the daily market movements and to profit from those short-term changes

rather than to profit from the long-term holding of investments.  See Endicott v.

Commissioner, at *13-*14; Holsinger v. Commissioner, T.C. Memo. 2008-191,

2008 Tax Ct. Memo LEXIS 187, at *7.

We have found that during each of the years 2005 and 2006 both petitioner

and Mr. Zabasky executed trades on petitioner's investment account.  On the

record before us, we find that petitioner has failed to carry her burden of estab-

lishing, and the record does not otherwise establish, how many of the (1) 535

trades executed on petitioner's investment account during 2005 and (2) 235 trades

executed on that account during 2006 were executed by petitioner and how many

of those respective trades were executed by Mr. Zabasky.  As a result, we do not

know which of the total trades executed on petitioner's investment account during

each of the years 2005 and 2006 we should use as petitioner's trades in analyzing

[*14] whether (1) the trading activity of petitioner during each of those years was substantial and (2) whether petitioner sought in her trading activity during each of the years 2005 and 2006 to catch the swings in the daily market movements and to profit from those short-term changes.

Assuming arguendo that petitioner had established that she executed all of the trades executed on petitioner's investment account during each of the years 2005 and 2006, we nonetheless would find on the record before us that she has failed to carry her burden of establishing that she was a trader for each of her taxable years 2005 and 2006. That is because, inter alia, petitioner has failed to carry her burden of establishing that her trading activity during each of those years was substantial.

In determining whether a taxpayer's trading activity is substantial, we consider the number of trades executed in a year, the amount of money involved in those trades, and the number of days on which trades were executed.[4] See Endicott v. Commissioner, at *14; Kay v. Commissioner, 2011 Tax Ct. Memo LEXIS 156, at *7-*9.

---

[4]The following discussion assumes arguendo that during each of the years 2005 and 2006 petitioner executed all of the trades on petitioner's investment account.

[*15]    With respect to the number of trades executed in a year, (1) 535 trades were executed during 2005 on petitioner's investment account and (2) 235 trades were executed during 2006 on that account.  We have held in Endicott v. Commissioner, at *14-*15, that 204 trades and 303 trades were not substantial and that 1,543 trades were substantial.  See also Kay v. Commissioner, 2011 Tax Ct. Memo LEXIS 156, at *9-*10 (313 executed trades were not substantial); Holsinger v. Commissioner, 2008 Tax Ct. Memo LEXIS 187, at *8 (372 executed trades were not substantial); cf. Mayer v. Commissioner, T.C. Memo. 1994-209, 1994 Tax Ct. Memo LEXIS 216, at *11, *17 (1,136 executed trades were substantial).

On the record before us, we find that the total number of trades on petitioner's investment account during each of the years 2005 and 2006 was not substantial for each of petitioner's taxable years 2005 and 2006.

With respect to the amount of money involved in the trades during a year, there were on petitioner's investment account (1) during 2005 purchases of approximately $32.5 million and sales of approximately $32.9 million, and (2) during 2006 purchases of approximately $24.2 million and sales of approximately $24.3 million.  We acknowledge that the respective amounts of purchases and sales during each of those years are considerable.  However, those amounts

[*16] are not determinative of whether petitioner's securities trading activity was substantial for each of her taxable years 2005 and 2006. See Moller, 721 F.2d at 814; Kay v. Commissioner, 2011 Tax Ct. Memo LEXIS 156, at *10.

With respect to the number of days in a year on which trades were executed, trades were executed on petitioner's investment account on (1) 121 days during 2005 (i.e., on 48.4 percent of the 250 available trading days in 2005) and (2) 66 days during 2006 (i.e., on 26.4 percent of the 250 available trading days in 2006). In cases in which taxpayers have been found to have been traders, the number of a taxpayer's transactions evidenced that the taxpayer was engaged in market transactions on an almost daily basis. See Moller, 721 F.2d at 813-814; see also Chen v. Commissioner, T.C. Memo. 2004-132, 2004 Tax Ct. Memo LEXIS 131, at *11-*12.[5] With respect to the 535 trades executed on petitioner's investment account on 121 days during 2005, the purchases for 95 of those trades occurred in the one-week period September 27 to October 3. Moreover, there were the following eight periods during 2005 of at least seven days where no purchases or sales occurred on petitioner's investment account: (1) January 7 to January 19; (2) February 10

_____

[5]Moreover, we have held that executing trades on (1) 110 days, see Holsinger v. Commissioner, T.C. Memo. 2008-191, 2008 Tax Ct. Memo LEXIS 187, at *8, and (2) 73 days, see Kay v. Commissioner, T.C. Memo. 2011-159, 2011 Tax Ct. Memo LEXIS 156, at *2, *8-*10, was not frequent, continuous, or regular enough to qualify as a trade or business within the meaning of sec. 162(a).

**[\*17]** to February 16; (3) May 19 to May 25; (4) June 3 to June 9; (5) June 17 to June 28; (6) July 16 to July 25; (7) July 27 to August 8; and (8) November 29 to December 6.  With respect to the 235 trades executed on petitioner's investment account on 66 days during 2006, the purchases for only two of those trades occurred during the period January 27 to May 4.  Moreover, there were the following seven periods during 2006 of at least seven days where no purchases or sales occurred on petitioner's investment account:  (1) January 4 to January 25; (2) July 15 to July 25; (3) July 29 to August 15; (4) August 19 to September 4; (5) September 16 to October 4; (6) October 13 to October 23; and (7) December 20 to December 31.

On the record before us, we find that the total number of days on which trades were executed on petitioner's investment account during each of the years 2005 and 2006 was not substantial for each of petitioner's taxable years 2005 and 2006.

Based upon our examination of the entire record before us, we find that petitioner has failed to carry her burden of establishing that for each of her taxable years 2005 and 2006 she engaged in the trade or business within the meaning of section 162(a) of buying and selling securities for her own account.  As a result,

**[\*18]** we further find that petitioner is not entitled to deduct under section 162(a) any of the expenses that petitioner is claiming here as Schedule C expenses.[6]

We turn finally to whether petitioner is liable for each of her taxable years 2005 and 2006 for the accuracy-related penalty under section 6662(a). That section imposes an accuracy-related penalty of 20 percent of the underpayment to which section 6662 applies. Section 6662 applies to the portion of any underpayment which is attributable to, inter alia, (1) negligence or disregard of rules or regulations, sec. 6662(b)(1), or (2) a substantial understatement of tax, sec. 6662(b)(2).

The term "negligence" in section 6662(b)(1) includes any failure to make a reasonable attempt to comply with the Code. Sec. 6662(c). Negligence has also

---

[6]Assuming arguendo that petitioner had carried her burden of establishing that for each of her taxable years 2005 and 2006 she engaged in the trade or business within the meaning of sec. 162(a) of buying and selling securities for her own account, we would nonetheless find that, except for $5,000 of "Office" expenses and $2,500 of "Utilities" expenses that respondent concedes for each of those years and $740 of "Taxes and licenses" expenses that respondent concedes for her taxable year 2006, petitioner is not entitled to deduct under that section any of the expenses that she is claiming here as Schedule C expenses. That is because we find on the record before us that petitioner has failed to carry her burden of establishing (1) that the respective payments that she made during the years 2005 and 2006 were made for the expenses remaining at issue for which she claims those payments were made and (2) that any such expenses are ordinary and necessary expenses within the meaning of sec. 162(a) in carrying on a securities trading business.

[*19] been defined as a failure to do what a reasonable person would do under the circumstances. Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992), affg T.C. Memo. 1991-179; Antonides v. Commissioner, 91 T.C. 686, 699 (1988), aff'd, 893 F.2d 656 (4th Cir. 1990). The term "negligence" also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c).

For purposes of section 6662(b)(2), an understatement is equal to the excess of the amount of tax required to be shown in the tax return over the amount of tax shown in the return. Sec. 6662(d)(2)(A). An understatement is substantial in the case of an individual if the amount of the understatement for the taxable year exceeds the greater of 10 percent of the tax required to be shown in the tax return for that year or $5,000. Sec. 6662(d)(1)(A).

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, such portion. Sec. 6664(c)(1). The determination of whether the taxpayer acted with reasonable cause and in good faith depends on all the pertinent facts and circumstances, including the taxpayer's efforts to assess the taxpayer's proper tax liability, the

[*20] knowledge and experience of the taxpayer, and the reliance on the advice of a professional, such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs. Reliance on the advice of a professional may demonstrate reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith. Id. In this connection, a taxpayer must demonstrate that the taxpayer's reliance on the advice of a professional concerning substantive tax law was objectively reasonable. Goldman v. Commissioner, 39 F.3d 402, 408 (2d Cir. 1994), aff'g T.C. Memo. 1993-480. A taxpayer's reliance on the advice of a professional will be objectively reasonable only if the taxpayer has provided necessary and accurate information to the professional. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002); see also Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978).

Respondent argues that petitioner is liable for each of her taxable years 2005 and 2006 for the accuracy-related penalty under section 6662(a) because of her negligence or disregard of rules or regulations under section 6662(b)(1).[7] On

---

[7]Respondent also argues: "In the event that petitioner is found not to have been negligent, the Court should still consider whether petitioner has shown reasonable cause or good faith on the likelihood that there will still be a substantial understatement in [sic] both the 2005 and 2006 tax years." According to respondent, "[g]iven the substantial dollar amounts of the adjustments settled prior to trial, a Tax Court Rule 155 computation will be necessary before a determination of a substantial understatement can be made."

**[\*21]** the record before us, we find that respondent has satisfied respondent's burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662(a).[8]

It is petitioners' position on brief that she "made a reasonable attempt to comply with the provision of the Internal Revenue Code to report her sources of income.[9] She acted in good faith and with reasonable cause. Therefore, the Section 6662 penalty imposed on her has been asserted against her in error." Like petitioner's testimony, her above-quoted position on brief is general, conclusory, vague, self-serving, uncorroborated, and/or not credible. Except for claiming

---

[8]For example, petitioner did not keep adequate books and records or substantiate properly the respective expenses that she claimed in her 2005 Schedule C and her 2006 Schedule C. Indeed, she conceded before the trial in this case (1) $416,688 of the $504,217 of expenses that she claimed in her 2005 Schedule C and (2) $208,198 of the $303,910 of expenses that she claimed in her 2006 Schedule C. Moreover, assuming arguendo that petitioner had carried her burden of establishing that for each of her taxable years 2005 and 2006 she engaged in the trade or business within the meaning of sec. 162(a) of buying and selling securities for her own account, we would nonetheless find that, except for $5,000 of "Office" expenses and $2,500 of "Utilities" expenses that respondent concedes for each of those years and $740 of "Taxes and licenses" expenses that respondent concedes for her taxable year 2006, petitioner is not entitled to deduct under that section any of the expenses that she is claiming here as Schedule C expenses for each of the years at issue. See supra note 6.

[9]We do not understand what petitioner means when she claims to have "made a reasonable attempt to comply with the provision of the Internal Revenue Code to report her sources of income." (Emphasis added.)

[*22] during her testimony that she "talked to a friend of mine who is an accountant", and who allegedly told her that she "need[ed] to file a Schedule C, sole proprietor, as a trader", petitioner offered no evidence that she made any attempts to ascertain whether she should take the position in each of her 2005 return and her 2006 return that she was a trader for each of her taxable years 2005 and 2006.

As for petitioner's claim that she "talked to a friend of mine who is an accountant", the record is devoid of evidence regarding what, if any, information she gave her so-called friend/accountant when she allegedly talked to him.[10] As discussed above, a taxpayer must demonstrate that the taxpayer's reliance on the advice of a professional concerning substantive tax law was objectively reasonable. Goldman v. Commissioner, 39 F.3d at 408. A taxpayer's reliance on the advice of a professional will be objectively reasonable only if the taxpayer has provided necessary and accurate information to the professional. NeonatologyAssocs.,

---

[10]Petitioner did not call as a witness at the trial in this case her "friend" who she claims is an "accountant". Nor did petitioner explain why she failed to call that person to testify. We presume that the testimony of petitioner's so-called friend/accountant would not have been favorable to her position that she was a trader for each of her taxable years 2005 and 2006. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), aff'd, 162 F.2d 513 (10th Cir. 1947).

[*23] P.A. v. Commissioner, 115 T.C. at 99; see also Ma-Tran Corp. v. Commissioner, 70 T.C. at 173.

On the record before us, we find that petitioner has failed to carry her burden of establishing that there was reasonable cause for, and that she acted in good faith with respect to, the respective underpayments for her taxable years 2005 and 2006.

Based upon our examination of the entire record before us, we find that petitioner has failed to carry her burden of establishing that she is not liable for each of her taxable years 2005 and 2006 for the accuracy-related penalty under section 6662(a).

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and respondent's concession,

Decision will be entered under Rule 155.